DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF THE ELLINGTON LOAN ACQUISITION TRUST 2007-2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-2,**
Appellant,

v.

**JAMES HESS** a/k/a **JAMES H. HESS, JULIAANN HESS** a/k/a **JULIANN HESS** a/k/a **JULIAAN HESS, THE GABLES AT BONAVENTURE HOMEOWNERS' ASSOCIATION, INC., TOWN CENTER CLUB AUTHORITY, INC., HOUSEHOLD FINANCE CORPORATION III,** and **UNITED STATES OF AMERICA,**
Appellees.

No. 4D16-3594

[October 18, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kathleen D. Ireland, Judge; L.T. Case No. CACE12011556.

Charles P. Gufford of McCalla Raymer Leibert Pierce, LLC, Orlando, for appellant.

Jonathan Kline of Jonathan Kline, P.A., Weston, for appellees James Hess a/k/a James H. Hess and Juliaann Hess a/k/a Juliann Hess a/k/a Juliaan Hess.

BUCHANAN, LAURIE E., Associate Judge.

HSBC Bank USA, National Association, as Trustee for the Holders of the Ellington Loan Acquisition Trust 2007–2, Mortgage Pass-Through Certificates, Series 2007-2 ("the Bank"), appeals the trial court's order granting final judgment in favor of James and Juliaann Hess ("Borrowers") for lack of standing. We reverse because the Bank established its standing to foreclose by virtue of its possession of the note indorsed in blank.

In April of 2012, the Bank filed a one count verified mortgage foreclosure complaint against Borrowers. In its complaint, the Bank alleged that it was the holder of the note and was entitled to enforce the

terms thereof. The copy of the note attached to the complaint contained a single, undated blank indorsement from Fremont Investment & Loan ("Fremont"), the original lender.

Borrowers answered the complaint and generally denied all of the Bank's material allegations. They also raised several affirmative defenses including lack of standing. The lack of standing affirmative defense was premised on Borrowers' argument that the indorsement appearing on the note reflected that Fremont had already indorsed the note to "an unknown third party." Notably, Borrowers did not challenge the authenticity or enforceability of the indorsement in their answer.

The matter proceeded to a bench trial where the Bank presented its case through the testimony of a single witness. The witness, a default specialist employed with the Bank's servicer, identified the original note and testified that the indorsement must have been placed on the note prior to the filing of the Bank's complaint as the very same indorsement appeared on the copy of the note attached to the complaint. The original note was admitted into evidence without objection, and Borrowers stipulated on the record that the original note contained an indorsement. The Bank also moved into evidence, over hearsay and trustworthiness objections, a recorded 2008 loan modification agreement showing that the original principal amount of $446,500 was increased to $474,365.48. As additional evidence of standing, the Bank also introduced an assignment of mortgage dated September 16, 2011 showing that Borrowers' mortgage "together with the note" was assigned to the Bank.

During cross-examination, defense counsel asked the witness if, during the boarding process, the servicer checks or verifies that the original lender of any given loan is still in existence. The witness responded that he did not know. Defense counsel then generally asked "[i]f there was a problem with an entity, would that may[be] affect the go, no go in the boarding process that you've described earlier," and the witness responded "I would think so, yes." Based on the witness's response, defense counsel then successfully introduced an exhibit consisting of printouts from the FDIC website showing the legal status of Fremont. Defense counsel then showed the exhibit to the witness and asked him to confirm that Fremont "was involved in a voluntary liquidation and closing" and had been inactive since July 25, 2008. The witness confirmed that, according to the exhibit, Fremont voluntarily closed on July 25, 2008.

After the parties rested, the matter proceeded to closing where the arguments primarily centered on the issue of standing. The Bank argued that it clearly established standing as holder of the note by virtue of its

possession of the note indorsed in blank. Borrowers countered that the Bank was required to provide "testimony to show that the [i]ndorsement was placed on the note prior to [Fremont] becoming shutdown." They also argued that the Bank could not establish standing via the 2011 assignment of mortgage because that assignment was ineffective in that it was executed after Fremont voluntarily closed in 2008.

The trial court agreed with Borrowers and ruled that the Bank could not rely on the assignment of mortgage to establish standing. Specifically, the court reasoned that because Fremont was no longer in existence at the time the assignment of mortgage was executed, it had no authority to assign the note or mortgage to the Bank. Moreover, although the court acknowledged that the Bank possessed the original note indorsed in blank, it insisted that "[e]ven though a party has possession of a note, they still have to have . . . appropriate possession." Accordingly, the court found that the Bank lacked standing and entered final judgment in favor of Borrowers. This timely appeal follows.

"A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" at the time the lawsuit was filed. *McLean v. JP Morgan Chase Bank Nat'l Ass'n,* 79 So. 3d 170, 173 (Fla. 4th DCA 2012). "A negotiable instrument, such as the promissory note in this case, is enforceable by the holder, a nonholder in possession of the instrument with the rights of a holder, or a person not in possession but entitled to enforce it." *Caraccia v. U.S. Bank, Nat'l Ass'n,* 185 So. 3d 1277, 1279 (Fla. 4th DCA 2016). A "holder" is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." § 671.201(21)(a), Fla. Stat. (2016).

In cases where standing is established by possession of a note bearing a blank indorsement, "'*possession of the note* is the significant core element to be analyzed.'" *Ortiz v. PNC Bank, Nat. Ass'n,* 188 So. 3d 923, 925 (Fla. 4th DCA 2016) (quoting *Rodriguez v. Wells Fargo Bank, N.A.,* 178 So. 3d 62, 65 (Fla. 4th DCA 2015) (Conner, J., concurring)). In that regard, "the fact that a copy of a note is attached to a complaint does not conclusively or necessarily prove that the [b]ank had actual possession of the note at the time the complaint was filed." *Id.* If, however, "the [b]ank later files with the court the original note in the same condition as the copy attached to the complaint," we have held that "the combination of such evidence is sufficient to establish that the [b]ank had actual possession of the note at the time the complaint was filed and, therefore, had standing to bring the foreclosure action, absent any testimony or evidence to the contrary." *Id.*

3

In the present case, the Bank sought to establish standing via its status as holder of the note bearing an undated blank indorsement. The note attached to its complaint reflected said blank indorsement. The Bank later filed the original note in the same condition as the copy attached to the complaint with the court. The combination of such evidence was more than sufficient to establish that the Bank had standing to initiate and maintain the foreclosure action. *See Ortiz*, 188 So. 3d at 925. Furthermore, insomuch as the trial court appears to have concluded that, irrespective of the Bank's status as holder of the note, the Bank was required to have "appropriate possession" of the note in order to enforce the instrument, this reasoning is flawed as a holder is entitled to enforce a note even if it "is not the owner of the instrument or is in **wrongful possession** of the instrument." § 673.3011, Fla. Stat. (2016) (emphasis added). Accordingly, even if the assignment of mortgage was invalid and the Bank was in wrongful or "inappropriate" possession of the note, it does not change the fact that the Bank, as the undisputed holder of Borrowers' note indorsed in blank, had standing and was entitled to enforce the note. *See id.*

Borrowers acknowledge the presumption of standing holding in *Ortiz*, but maintain that contrary evidence was presented in this case to show lack of standing, namely the FDIC website printouts. Specifically, they argue that because Fremont closed on July 25, 2008, which predates the filing of the complaint, it "no longer had authority or legal capacity to create a blank [i]ndorsement, [and therefore] the alleged blank [i]ndorsement transferred no interest to any subsequent holder." There is a major flaw in Borrowers' argument: the blank indorsement is **undated**. Had the indorsement been dated, then evidence showing that the indorsement was placed on the note after Fremont closed could potentially have served as contrary evidence of standing. However, as the blank indorsement appearing on Borrowers' note is undated, and as Borrowers never denied Fremont's authority to place the indorsement on the note in their pleadings, no such "contrary" evidence exists in this case. *See* § 673.3081(1), Fla. Stat. (2016) ("In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings."); *Riggs v. Aurora Loan Servs., LLC*, 36 So. 3d 932, 933 (Fla. 4th DCA 2010) (citing section 673.3081 and holding that the borrowers could not challenge the authenticity of the indorsement because they never placed its authenticity at issue in their pleadings).

Accordingly, we reverse the final judgment entered in favor of Borrowers and remand for entry of final judgment of foreclosure in favor of the Bank.

4

*Reversed and remanded.*

WARNER and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**